UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH LINDSAY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-3010 |
| | § | |
| LOGAN OIL TOOLS, INC., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to remand filed by plaintiff Kenneth Lindsay. Dkt 6. After considering the motion, response, and applicable law, the court is of the opinion that the motion to remand should be DENIED. Additionally, the alternative motion to amend the original petition contained within Lindsay's motion to remand (*see* Dkt. 6) should be GRANTED, and the pending motion to dismiss the original petition (Dkt. 2) should be DENIED AS MOOT.

**I. BACKGROUND**

Lindsay was employed by defendant Logan Oil Tools, Inc. ("Logan Oil") on February 1, 2015, when his wife, Linda Lindsay died. Dkt. 7-1 (original state court petition). Lindsay thought that he had a voluntary life and accidental death and dismemberment insurance policy through his employer. *See id.* However, when he submitted a claim to the insurer, Unum Life Insurance Company of America ("Unum"), Unum denied the claim due to lack of coverage. *Id.* According to Lindsay, two individuals who worked in Human Resources for Logan Oil were "unfit, incompetent, and/or negligent" and failed to timely renew the policy. *Id.* Lindsay contends that Logan Oil breached its fiduciary duty and also did not use ordinary care in hiring, training, supervising, or retaining the individuals who were entrusted to timely renew the policy. *Id.*

On August 24, 2016, Lindsay filed a petition against Logan Oil in the 127th Judicial District Court in Harris County, Texas, asserting claims of negligence, breach of fiduciary duty, and negligent hiring, training, supervision, and entrustment. Dkt. 1-1 (original petition). Logan Oil removed the claim to this court on October 7, 2016, claiming that Lindsay's state-law claims are completely preempted by Employee Retirement Income Security Act of 1974 ("ERISA"). Dkt. 1. Lindsay now moves to remand, arguing that his claims are not governed by ERISA. Dkt. 6.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases involving diversity and an amount in controversy exceeding $75,000. 28 U.S.C. §§ 1331, 1332. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425 (1987). Removal of civil actions is governed by 28 U.S.C. § 1441. "[A]ny civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court . . . ." *Id.* at § 1441(a). A defendant seeking removal bears the burden of proving federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995). Because the effect of removal is to deprive the state court of an action properly before it, the removal statute is to be strictly construed, and any doubt about the propriety

of removal must be resolved in favor of remand. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir.2007).

Logan Oil removed this case under federal question jurisdiction. Such jurisdiction is most often invoked by plaintiffs pleading a cause of action created by federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). However, federal question jurisdiction may also "lie over some state-law claims that implicate significant federal issues." *Id.* Such claims are "recognized under state law [but] turn on questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* In these cases, "the question is whether the state-law claim necessarily stated a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

A defendant cannot remove a case based solely on its preemption defense. *See Caterpillar*, 481 U.S. at 393 (interpreting the federal removal statute). This is because the removal statute permits removal "only where original federal jurisdiction exists." *Id.* However, "[o]nce an area of state law has been *completely* pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim [that] therefore arises under federal law." *Id.* (emphasis added). The Supreme Court has only found complete preemption in three areas: the usury provisions of the National Bank Act ("NBA"); ERISA; and the Labor Management Relations Act ("LMRA"). *Vasquez v. Wells Fargo Bank*, N.A., No. H–11–4086, 2013 U.S. Dist. LEXIS 6208, at *15 (S.D.Tex. Jan. 8, 2013) (Harmon, J.) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8–11, 123 S.Ct. 2058 (2003); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S.Ct. 1542 (1987);

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560, 88 S.Ct. 1235 (1968)). "These statutes are distinctive because they 'provid[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.' " *Id.* (quoting *Beneficial Nat'l Bank*, 539 U.S. at 15.). Aside from complete preemption, a defense of preemption does not support removal to federal court "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

### III. ANALYSIS

Here, the parties agree that Lindsay's state-law claims are completely preempted if they are governed by ERISA, but they disagree as to whether the policy at issue is an ERISA plan. *See* Dkt. 6; Dkt. 10. ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1). "To be an ERISA plan, the arrangement must be (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer with the intent to benefit employees." *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008).

The only argument Lindsay asserts in his motion to remand is that the plan at issue is excluded from ERISA by the safe harbor provision contained in 29 C.F.R. § 2510.3–1(j)(1)–(4) (1992). Dkt. 6 at 4. Under 29 C.F.R. § 2510.3–1(j)(1)–(4),

> the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
> (1) No contributions are made by an employer or employee organization;
> (2) Participation the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

Lindsay contends that the safe harbor applies because Logan Oil never paid premiums for the plan and participation in the plan was completely voluntary. Dkt. 6. Lindsay asserts that Logan Oil's role was limited to collecting premiums and remitting them to the insurer and that Logan Oil received no profits from the plan. *Id.* Logan Oil responds that all four prongs must be met to fall within the safe harbor, and the first and third prongs fail in this case because Logan Oil contributed to the plan and because Logan Oil did more than just collect premiums and remit them to the insurer. Dkt. 10.

The court agrees with Logan Oil. Logan Oil provides evidence from its employee benefits handbook that Logan Oil provided a basic life insurance policy for employees and that the employees could also select life insurance for their families but must pay the full cost of this additional coverage. *Id.* (citing Dkt. 10, Ex. A, Ex. 3 (indicating that Logan Oil "provides a mandatory Basic Life Insurance" policy for the employee and that the employee "may also purchase" life insurance for his or her family). The employee could only receive coverage for his or her family if they elected the coverage provided by Logal Oil for the employee himself or herself. *Id.* (citing Dkt. 10, Ex. A ("Only

5

by accepting coverage funded by Logan under the Group Policy, could Lindsay purchase optional insurance for his wife.")). Thus, the additional coverage could not exist independently from the coverage provided by the employer. Accordingly, Logan Oil did "contribute" to the plan, even though the family insurance was optional and the expense completely paid by the employee, because the family insurance plan would not even have been available to Lindsay without Logan Oil's contribution to the entire package. *See Glass v. United of Omaha Life Ins., Inc.*, 33 F.3d 1341, 1345 (11th Cir. 1994) ("Elect life coverage was provided at discount rates only to participants of the Basic plan. The Elect life feature is part and parcel of the whole group insurance plan and thus ERISA governs it."); *Armstrong v. Columbia/HCA Healthcare Corp.*, 122 F. Supp. 2d 739, 743 (S.D. Tex. 2000) ("The Court declines to hold that each element of a benefits package must be viewed as a microcosm. As such this dependant coverage cannot be severed from the remainder of the life benefits package."). The safe harbor does not apply.

### IV. CONCLUSION

Because the safe harbor does not apply, Lindsay's motion to remand (Dkt. 6) is DENIED. Lindsay asserts an alternative motion to amend his complaint. *See* Dkt. 6. The motion to amend is GRANTED. Lindsay shall file his amended complaint within thirty (30) days of the date of this order. Logan Oil's currently pending motion to dismiss (Dkt. 2) is DENIED AS MOOT.

Signed at Houston, Texas on December 23, 2016.

_____
Gray H. Miller
United States District Judge